Beechler et al., Appellees, *v.* Winkel et al., Appellants

(No. E-77-34—Decided March 3, 1978.)

*Messrs. Howells, Kellam & Owens* and *Mr. Walter R. Wagner,* for appellees.

*Murray & Murray Co., L. P. A.,* for appellants.

*Mr. William E. Didelius,* for defendants Kenneth Polta, the county engineer, and the Board of Commissioners of Erie County.

CONNORS, J. This is an appeal from a judgment order filed on August 15, 1977, in the Court of Common Pleas of Erie County, in favor of the plaintiffs-appellees. A notice of appeal was filed with the Clerk of Courts on July 6, 1977, and the briefs herein were timely filed. The matter was argued before this court on November 7, 1977.

The original complaint was filed on March 20, 1975. Plaintiffs sought a declaratory judgment, with an alternative prayer for relief, which complaint consisted of two counts. Count I alleged that plaintiffs were owners of property abutting roads located in the subdivision once owned by defendants who caused a plat of the subdivision to be filed and dedicated certain properties to public use. The count alleged that plaintiffs purchased their lots relying on the promise contained in the plat and oral representation made by the defendants. Count I further alleged that plaintiffs made demands on the Winkels to comply with the promises, which the Winkels refused to do. Claiming no adequate remedy at law, plaintiffs invoked the trial court's equity jurisdiction to determine: (1) whether the promises of the Winkels were binding; (2) according to what specifications the Winkels would be required to improve the roads; and (3) according to what specifications the County Engineer, Kenneth Polta, and the Board of County Commissioners would be required to accept the roads. In Count II, plaintiffs prayed that if the court found the Winkels obligated to improve the roads, the court alternatively award money judgment against the Winkels for the cost of putting in the necessary improvements.

The Winkels answered on August 6, 1975, asserting the following defenses: (1) laches; (2) lack of privity of certain plaintiffs; (3) failure of the complaint to state a cause of action upon which relief could be granted; (4) the statute of limitations; (5) merger of any promises made by defendants into the deeds; and (6) lack of consideration.

The answer of the defendants Polta and the Board of County Commissioners prayed that plaintiffs' complaint be dismissed.

On April 6, 1976, the trial court entered a judgment granting the Winkels' motion for a judgment on the pleadings and dismissing the case on the ground that the complaint failed to state a cause of action upon which relief could be granted. Plaintiffs appealed.

On July 2, 1976, this Court of Appeals reversed the judgment of the trial court, finding that the plaintiffs' complaint stated a cause of action. The case was remanded for further proceedings.

On April 25-26, 1977, the Court of Common Pleas of Erie County, without a jury, heard evidence on Count I of plaintiffs' complaint. At the conclusion of the evidence, the court ruled that plaintiffs established by clear and convincing evidence that they were entitled to relief. The judgment entry of the trial court, filed June 8, 1977, after disposing of various pending motions, contains the following judgment orders:

"As to question No. 1 of the plaintiffs' complaint for a declaratory judgment, the court finds that said promise of the defendants, Ralph James Winkel and Frances Ann Winkel, to improve the roads in the subdivision in accordance with specifications of the County Commissioner, is binding upon said defendants and that they owe the duty to improve said roads.

"As to question No. 2 of the plaintiffs' complaint for a declaratory judgment, the court having found in the affirmative as to question No. 1, then finds that the duty of the defendants, Ralph James Winkel and Frances Ann Winkel, to improve the streets should be done in accordance with specifications in existence in 1975, those specifications being the same as the date of the judgment order.

"As to question No. 3 of the plaintiffs' complaint for a declaratory judgment, the court having found that the defendants owe a duty to conform to 1975 specifications, therefore, the Engineer is bound to accept only the 1975 specifications."

The court then considered the question of preparation of plans, specifications and cost estimates for the construction of the roads and in regard to this question, the court further ordered the Erie County Engineer to

prepare plans and detailed specifications for construction of the roads in the subdivision as set forth in the complaint, in accordance with the County Engineer's current standards for such roads. The County Engineer was ordered to complete the plans and specifications within nine months of the filing of the judgment order, the same to be completed sooner if possible considering the County Engineer's work schedule. Upon completion of said plans and specifications the County Engineer was ordered to notify the defendants, Ralph James Winkel and Frances Ann Winkel, in writing, that said plans and specifications had been completed. If said defendants, Ralph James Winkel and Frances Ann Winkel, had not previously notified the County Engineer that they were proceeding to construct the roads in accordance with the current plans and specifications and under the inspection of the Erie County Engineer's Office, and if notice of the defendants' desire to proceed immediately to complete said roads was not received by the County Engineer's notice as set forth therein, then, in that event, the County Engineer was ordered to proceed to advertise the road project for competitive bids and to accept the lowest and best bid in accordance with the County Engineer's normal procedure in such matters. Upon acceptance of the lowest and best bid, the County Engineer was ordered to notify the defendants of the amount of the bid and the County Engineer was likewise ordered to notify the defendants of the amount of money, including the amount of the bid, any cost of preparation of plans and specifications, and inspection fees, that was necessary to accomplish the construction of the roads. It was the further order of the court that the defendants, Ralph James Winkel and Frances Ann Winkel, deposit with the office of the Erie County Commissioners the amount of money as specified by the Engineer in his notice that was necessary to complete the construction of the roads, including inspection fees and costs of preparation of plans and specifications, and the deposit of money was to be made within fifteen days from the date defendants were notified of the amount. In the event that the sum of

money was not deposited with the office of the County Commissioners within the time set forth, a money judgment equal to the total amount of the Engineer's notice was to be rendered against the defendants, Ralph James Winkel and Frances Ann Winkel, and in favor of the plaintiffs in this case. Any one of the plaintiffs named in the action was permitted to proceed to enforce and collect the judgment on behalf of all other property owners in the subdivision. Any judgment received in this matter was ordered paid by the Clerk of Courts to the Board of County Commissioners for payment of the cost of preparation of plans, construction and inspection as set forth in the order. Any judge in the Common Pleas Court of Erie County was to be permitted to hear evidence to enforce or supplement the order, including awarding a money judgment against the defendants, Ralph James Winkel and Frances Ann Winkel, and to further enforce the terms of the order for the collection of the amount as determined by the Engineer. The costs of the action were assessed against the defendants, Ralph James Winkel and Frances Ann Winkel.

From this judgment order, the defendants set forth four assignments of error, with five subsections.

The first assignment of error is as follows:

"The judgment of the trial court, in this equity proceeding, was contrary to law and against the manifest weight of the evidence."

There is no question but that in 1960, the defendants purchased seventy to seventy-five acres of farmland, 11.78 acres of which they subdivided into a nineteen lot subdivision. At the time the plat was submitted to the recorder's office for recording, the county required the plat to contain a certificate that roads would be constructed in accordance with county specifications. The Winkels signed this certificate. At trial, Mr. Winkel, through counsel, argued that he believed the certificate obligated him to build the roads to county specifications only if he wanted the roads to be public.

After the plat was recorded, the Winkels constructed roads through the subdivision and subsequently sold the

nineteen lots. The purchasers who testified stated that the price which they paid for their lots was a fair price with the roads that Mr. Winkel had himself constructed and that the roads were acceptable to them.

From the record, the evidence is conflicting as to whether Mr. Winkel made oral representations promising to build the roads according to county specifications. The evidence is likewise uncertain as to the Winkels' alleged representation made prior to the contract of sale to each individual lot purchaser. No purchaser testified that he looked at the plat prior to buying the property. One witness, a nonparty, stated that he relied only upon what he saw. Certain lot owners who testified indicated that they had sold their parcels at a profit since purchasing them from the Winkels. The only testimony on the issue established that the costs of building the roads to meet present county specifications, as ordered by the court, would, in some cases, exceed the original sale price of the lots.

The appellees basically have no disagreement with the statement of the case as set forth by the appellants with the exception of the appellants' interpretation of the court's final decision. The appellants claim that the court ordered the Winkels to construct the road and if they failed to do so, they would then have a judgment rendered against them for money. Actually, what the court did, according to the appellees' interpretation of the court's order, was to answer the questions presented to it in the declaratory judgment action and rule that the defendants had a duty to construct the roads in accordance with to-day's specifications. The court then used what the appellees contend to be the best method of determining what the actual money damages would be if the Winkels did not construct the roads. Appellees argue that the court in essence said that the appellants should go ahead and construct the roads or else the County Engineer would advertise for bids and the lowest and best bid would be the amount for which a money judgment would be rendered against the defendants. We agree with the appellees' interpretation of the trial court's judgment order.

Plaintiffs' Exhibit I, a photostatic copy of the recorded plat, is most conclusive. This plat, entitled "Winkels Second Subdivision in part Lot 14, Section 4, Margaretta Township, Erie Couny, Ohio," was duly recorded with the Erie County Recorder on May 2, 1962, and is recorded in plat book 18 at page 42. Previously, on April 30, 1962, the transfer was noted by the Erie County Auditor. On April 30, 1962, the surveyor's certificate was signed.

The most controlling feature of this case is the ownership certificate which is part of the plat recording. The owner's certificate signed by Ralph James Winkel and Frances Ann Winkel is as follows:

"We the undersigned, Ralph James Winkel and Frances Ann Winkle, husband and wife, owners of the land embraced within the limits of the within plat, do hereby accept and adopt the same plat, and we hereby dedicate Marigold Drive, Greenfield Avenue, Hillcrest Drive, and Sunnydale Avenue, as shown on said plat to *public* use forever as *public* roads effective upon the acceptance of public use in accordance with Section 711.091 of the Ohio Revised Code. Said roads will be constructed by us in accordance with the specifications established by the Board of County Commissioners of Erie County, Ohio, by resolution adopted the 28th day of February, 1955, and as thereafter amended." (Emphasis ours.)

This owner's certificate was witnessed by two witnesses and signed before a notary public on the 16th day of April, 1962.

Subsequently, the county commissioners signed an acceptance of the proposed plat.

Subsequently, on April 26, 1962, the County Engineer in and for Erie County approved the within plat.

On April 12, 1962, the plat was approved by the Margaretta Township Zoning Inspector.

The only thing remaining to be done was an acceptance by the Erie County Engineer of the proposed roads. The County Engineer's road certificate, part of the plat, provides as follows:

"I hereby certify that Marigold Drive, Greenfield

Avenue, Hillcrest Drive, and Sunnydale Avenue as shown on the within plat have been constructed in accordance with the specifications established by the Board of Commissioners of Erie County, Ohio, by resolution adopted the 28th day of February, 1955, and as thereafter amended and that such roads are in good repair, and are hereby accepted for public use."

This portion of the plat remains unexecuted by the Erie County Engineer for the obvious reason that these roads were never constructed. The County Engineer would be in no position to accept the roads as proposed on the plat inasmuch as they had ever been constructed.

We agree with the contention of the appellees that the law involved in this case is a question of the promises both in the dedication plat and the subsequent oral promises of the defendants. Although some of the original purchasers of the lots testified that they had not seen the plat, as recorded, a purchaser is entitled to rely on a recorded plat. When an owner records a plat subdividing his land, showing streets or other public areas, followed by the selling of lots with a reference thereto, the new owners acquire a private easement in these streets and the owner is estopped to deny the right of the grantee to the use of said street and to all of the benefits contained in said plat. In this case, that includes each and every right, easement, privilege and advantage which the plat represents as belonging to them. *Cf. Findlaw* v. *Hunter* (1949), 87 Ohio App. 543; 17 Ohio Jurisprudence 2d 82, Dedication, Section 69.

Further, the case of *Krzewinski* v. *Eaton Homes, Inc.* (1958), 108 Ohio App. 175, at paragraph 3 of the syllabus, holds as follows:

"Where one buys a lot in a subdivision from the subdivider by reference only to a recorded plat of such lands, which plat delineates streets and highways as a means of ingress and egress for the buyer of the lot, and the deed of conveyance describes the lot purchased by reference to the plat, such purchaser may maintain an action in specific performance to compel the vendor-owner of the subdivision to open, to its full length as shown on the plat, the street upon which the lot abuts."

Further, on page 179, the Court stated as follows:
"We believe that when Eaton Homes, Inc., displayed to Mr. and Mrs. Krzewinski a plat showing Alton Drive as a through highway across Mencl Road, they impliedly promised to the purchasers that such roadway would be completed as shown on the plat. This promise became a part of the transaction as though written into the offer of purchase and the deed to conveyance."

See also *Highway Holding Co.* v. *Yara Engineering Corp.* (1956), 22 N. J. 119, 123 A. 2d 511; *Stevenson* v. *Lewis* (1910), 244 Ill. 147, 91 N. E. 56; 6 Powell on Real Property, Paragraph 935; Antieau, Municipal Corporation Law, Section 9.08; and 11 McQuillin, Municipal Corporations 677, Section 33.24 (3rd ed. 1977). These cases and texts stand for the proposition that filing a subdivision plat which shows streets or public areas, and selling lots in reference to the plat, creates easements and rights in the private owners, even if there is not a public dedication later; the private owners have rights separate from the rights of the general public.

The judge is clothed with the function of the jury in a non-jury trial. *Bowlin* v. *Black & White Cab Co.* (1966), 7 Ohio App. 2d 133. "The same general rules which govern the trial of cases before juries govern, in the main, the trial of cases before the court without the intervention of a jury when the court is empowered to act in the capacity of a jury." 53 Ohio Jurisprudence 2d 351, Trial, Section 393; *Ruben* v. *Superior Transfer Co.* (1928), 6 Ohio Law Abs. 479. The trial court's verdict must be affirmed when the only error argued is that the judgment was against the evidence and the factual development is such that the appellate court cannot hold that it is manifestly against the weight of the evidence. *Dunlevey* v. *Volk* (1950), 61 Ohio Law Abs. 358; 4 Ohio Jurisprudence 2d 563, Appellate Review, Section 1201. See *State* v. *Cickelli* (1962), 118 Ohio App. 87.

For the foregoing reasons, we find that the appellants' first assignment of error is not well taken.

The appellants' second assignment of error is as follows:

"The trial court lacked subject matter jurisdiction over plaintiffs' equitable cause of action."

This assignment of error is broken down into three separate arguments. We agree with appellees' statement that the Ohio Rules of Civil Procedure are very clear in stating that only one form of action exists, that being a civil action. The Common Pleas Court being a court of general jurisdiction, may exercise both legal and equitable powers. See 14 Ohio Jurisprudence 2d 587, Courts, Section 168. Civil Rule 18(A) provides: "A party asserting a claim to relief * * * may join, either as independent or as alternative claims, as many claims, legal or equitable, as he has against an opposing party."

Appellants claim that many of the plaintiffs in this action are not the real parties in interest as required under Civil Rule 17. We find that the case of *Krzewinski* v. *Eaton Homes, Inc., supra,* is dispositive of appellants' argument. The *Krzewinski* case stands for the proposition that any one property owner would be sufficient to enforce the promise to build. This holding defeats appellants' argument that each plaintiff must testify as to promises made individually to him or to a plaintiff, who owned or presently owns, a lot in the subdivision. Further, 15 Ohio Jurisprudence 2d 17, Covenants, Section 14, states: "A covenant is said to run with the land, when either * * *, or the right to take advantage of it, passes to the assignee of the land; it attaches to, and passes as an incident of, the ownership of the estate in the land." In the instant case, the appellees argue, the signed dedication certificate is a matter of public record; therefore, anyone purchasing a lot either from the defendants directly or from a prior purchaser should be entitled to rely on the dedication certificate. The right to the use and enjoyment of paved roads is necessary to the enjoyment and value of every property owner, regardless of whether or not he was an original purchaser.

Appellants in their assignment of error No. 2, part C, claim that the plaintiffs failed to demonstrate they had no adequate remedy at law. 20 Ohio Jurisprudence 2d 55, Equity, Section 22, states: "To bar equitable relief the

remedy at law must be as practicable and as efficient to attain the ends of justice and its prompt administration as the remedy in equity." The trial court, before it could determine monetary damages, had to determine whether or not the defendants owed the duty to construct the roads and, if so, to which set of specifications. The trial court has authority to determine preliminary issues and to determine the question of monetary damages at a later time so that the court's action here was entirely proper. In this case monetary damages would not be full, adequate and complete.

The proposition set forth by appellants is that they would prefer that the court award monetary damages to only one, or at best, only a few, of the plaintiffs. Clearly, from the record, the present property owners were not unanimous in their pursuit of this action. Nevertheless, logically, it is impossible to put in part of a road. Even though they did not fully pursue it, for reasons of their own, the right of having roads extends to all parties in the subdivision equally. We agree with appellees' argument, in that the solution of this matter is exactly what the trial court has ordered be done. That order requires the road to be completed either by the defendant Mr. Winkel, or by action of the county with the costs assessed to Mr. Winkel. Mr. Winkel has a choice of whether or not he wants to put in the road or have it done by the county under the lowest bid.

For the foregoing reasons, we find assignment of error No. 2 and its subparts are not well taken.

Appellants' third assignment of error is as follows:

"The trial court acted contrary to law in the type and scope of remedy of relief it granted."

This assignment of error will be considered with assignment of error No. 4, which provides as follows:

"The trial court erred in granting a remedy and the mandatory injunction."

Assignment of error No. 3 refers to the type of relief which the trial court granted. An examination of the judgment order of the court indicates that the trial court did

not grant the remedy of a mandatory injunction. The court allowed the appellants the alternative of constructing the roadway as called for in the recorded plat, or paying a money judgment in the amount to be determined by the court based on bids advertised by the county engineer. The defendants were given their choice either to build the paved roadway or pay a money judgment equal to the cost of construction.

With reference to the appellants' argument that an individual plaintiff's claim for relief was barred by the doctrine of laches, we note that no date was ever set for performance to begin, only a promise that the roads would be constructed sometime in the future. The appellants always had the right to comply with their promise and construct the road. If the trial court, as it did, ordered the roads to be constructed in accordance with the 1975 requirements rather than the specifications in 1962, that were required at that time pursuant to the specifications established by the Board of Commissioners of Erie County, by resolution adopted the 28th day of February, 1955, and as they were thereafter to be amended, the defendants are bound by that provision. If the defendants have been harmed by the passage of time, unfortuniately, they have created that time span themselves.

As part B of the fourth assignment of error, appellants argue that the granting of a mandatory injunction constituted a windfall to all plaintiffs and placed an unconscionable economic burden on them.

From the record, we are aware of the price for which the appellants sold the individual lots, and we are also cognizant of the eventual possible loss to them at this time in view of the trial court's findings and order and the decision of this court. While we can be sympathetic to a situation such as this, nevertheless, we are of the opinion, in view of the appellants' owner's certificate, identification of the land involved herein, and the covenant that runs with each individual lot, that the plaintiffs are entitled to the relief sought. It is quite possible that if the appellants had realized the eventualities, they would not have sold the

individual lots for the insignficant prices for which they did. The defendants set the prices for their lots which were purchased by the plaintiffs and successors in title thereto. However, the construction of these roadways will allow, if they so desire, the appellants to develop the remainder of their land and should enhance the remainder. The case of *Merritz* v. *Circelli* (1949), 361 Pa. 239, 64 A. 2d 796, is distinguishable on the facts from the case under consideration. The case of *Commonwealth* v. *Pendleton* (1976), 356 A. 2d 848, is also distinguishable. However, in that case, the Supreme Court of Pennsylvania, in quoting from an earlier Pennsylvania Supreme Court case, stated as follows, at 849:

"Inadequacy of price, improvidence, surprise, and mere hardship, none of these, nor all combined, furnish an adequate reason for a judicial rescission of a contract. For such action something more is demanded, such as fraud, mistake or illegality."

We find none of the criteria mentioned above to be present in the case *sub judice*. Willing sellers and willing buyers agreed upon a sum of money as and for consideration. The court will not inquire as to the relative value of the consideration, even though at a subsequent date the seller is, because of force of circumstances, dissatisfied with the bargain that he made.

For the above stated reasons we find appellant's fourth assignment of error and its subsections, to be not well taken.

On consideration whereof the court finds substantial justice has been done the party complaining, and judgment of the Erie County Common Pleas Court is affirmed.

*Judgment affirmed.*

POTTER, P. J., and BROWN, J., concur.